UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JOHN L. LAUTZENHISER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 4:11-cv-86-RLY-WGH |
| COLOPLAST A/S, ) | |
| COLOPLAST CORPORATION Corporate ) | |
| Parent COLOPLAST A/S, ) | |
| COLOPLAST MANUFACTURING, US ) | |
| LLC, ) | |
| ) | |
| Defendants. | |

**ENTRY ON DEFENDANTS' 12(b)(6), 8(a), and 9(b), MOTION TO DISMISS**

Defendants Coloplast A/S, Coloplast Corporation, and Coloplast Manufacturing, US LLC ("Defendants" or "Coloplast"), move to dismiss Plaintiff John L. Lautzenhiser's ("Plaintiff") Complaint alleging: negligence, Count I; defective design, Count II; failure to warn, Count III; breach of express warranty, Count IV; breach of implied warranty, Count V; negligent misrepresentation, Count VI; fraud, Count VII; negligently providing misinformation, Count VIII; violation of the Indiana Deceptive Consumer Sales Practices Act ("Consumer Sales Act"), Count IX; and unjust enrichment, Count X. For the reasons set forth below, Defendants' Motion is **GRANTED in PART** and **DENIED in PART.**

**I.      Background**

On or about July 14, 2009, Plaintiff's doctor, without Plaintiff's knowledge or consent (Plaintiff's Complaint ¶ 18), surgically implanted in Plaintiff a VIRTUE Ventral

1

Urethral Elevation Sling System device ("Virtue device"), manufactured by Coloplast. (*Id.* ¶¶ 2, 4.). The device is used to treat male stress urinary incontinence ("SUI") and "is made from knitted, monofilament, polypropylene mesh." (*Id.* ¶ 2, 13.). However, seven months earlier, the Food and Drug Administration ("FDA") had issued a warning regarding complications with certain meshes used to treat female SUI, including a kit utilizing the same materials that was made by Mentor Corporation, which "sold its surgical, urological, clinical and consumer healthcare business segments to Coloplast . . . on or about June 2, 2006." (*Id.* ¶¶ 14-16.). As a result of the surgery, Plaintiff's SUI has significantly worsened and he had to undergo corrective surgery. (*Id.* ¶ 2.). Additionally, Plaintiff has suffered permanent and substantial physical pain, loss of ability to perform sexually, lost wages and impairment of ability to earn wages, lengthy delay in prognosis and corrective action, and shortening of life expectancy. (*Id.*).

Plaintiff further alleges that Defendants knew about problems with the Virtue device and the accompanying surgical procedures and that it should not have been released to the public to treat SUI. (*Id.* ¶ 20.). He also claims that Defendants failed to properly warn physicians and consumers, including Plaintiff, of these risks, failed to provide adequate warnings in marketing the Virtue device, and failed to properly instruct Plaintiff's doctors about the correct use and implant procedures for the Virtue device. (*Id.* ¶¶ 22-24.).

Plaintiff filed this ten count diversity suit on July 18, 2011. Defendants moved to dismiss all counts on November 14, 2011. Additional facts will be provided as necessary in the Discussion section.

## II. Motion to Dismiss and Pleading Standards

Rule 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To properly state a claim, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id.*, quoting *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In making its determination, the court accepts the factual allegations in the complaint as true and draws "all reasonable inferences in favor of the plaintiff." *Mallet v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir. 1997). In accordance with this standard, the court accepts the facts set forth as Plaintiff alleges them.

For Counts VII and IX, in which Plaintiff alleges fraud and violation of the Indiana Deceptive Consumer Practices Act, respectively, Plaintiff "must state with particularity the circumstances constituting fraud or mistake", Federal Rule of Civil Procedure 9(b), as opposed to the regular "notice pleading" standard of Rule 8(a) that applies for most other claims. Plaintiff must describe the "who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (quotation omitted).

## III. Discussion

3

Plaintiff and Defendants agree that several claims should be merged into a claim under the Indiana Products Liability Act ("IPLA"), which governs "all actions that are (1) brought by a user or consumer; (2) against manufacturer or seller; and (3) for physical harm caused by a product . . . regardless of the legal theory or theories under which the action is brought." IND. CODE § 34-20-1-1. They disagree, however, on the extent of the merger. Plaintiff states that:

> Counts I, II, and III of the complaint should be merged into a single statutory claim under the IPLA . . . [and] Counts IV and V of the Complaint . . .should also be merged into a single statutory claim under the IPLA to the extent that these warranty claims sound in tort.

(Plaintiff's Memorandum 9.). Defendants, meanwhile, claim that Counts I, II, III, V, and X should be merged into the IPLA claim. (Defendants' Reply 3.) Because Plaintiff should have the freedom to plead in the manner he sees fit, the court analyzes these claims pursuant to Plaintiff's merger. Defendants correctly state that the IPLA precludes any common law claims on products liability issues. *Kucik v. Yamaha Motor Corp., U.S.A.*, 2010 WL 2694962 at *3 (N.D. Ind. 2010). The court therefore analyzes the first combined claim under the IPLA, although the facts are separated by original count for simplicity's sake.

### A. Indiana Products Liability Act

#### 1. Claims I-III.

The IPLA is a comprehensive tort regime for products liability claims. It holds liable any actor who puts a dangerously defective product into the stream of Indiana commerce as to any user who suffers physical harm provided that:

4

> (1) the user or consumer is in the class of persons that the seller should reasonably foresee as being subjected to the harm caused by the defective condition;
> (2) the seller is engaged in the business of selling the product; and
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Plaintiff alleges that the Defendants are in the business of selling the Virtue device. (Plaintiff's Complaint ¶ 12.). As a patient who suffers SUI, Plaintiff was in the class of persons who were reasonably foreseeable to be harmed. (*Id.* ¶ 19.). Finally, there is no allegation of any substantial alteration of the product between manufacturing and implantation.

For the ordinary negligence, Count I, Plaintiff alleges that the Defendants failed to warn about dangerous, potentially adverse side effects of the Virtue device once they became aware of them (Plaintiff's Complaint ¶ 31 (b-d)) and failed to properly train and educate physicians about the device and its proper use. (*Id.* ¶ 31(i).). Plaintiff further claims the Defendants were negligent in research and development, promotion, and marketing of the device. (*Id.* ¶ 32.). Even with this knowledge, Coloplast continued to sell the device to consumers. (*Id.* ¶ 33.).

For the defective design, Count II, Plaintiff alleges that the Virtue device was made in an unsafe manner due to inadequate testing and being unreasonably dangerous. (*Id.* ¶ 44.). Coloplast knew or should have known that the Virtue device was defective, inherently dangerous, and unsafe when used in the manner instructed and provided by Coloplast. (*Id.* ¶¶ 45-46.). These defects were not discoverable by Plaintiff or his

doctors.  (*Id*. ¶ 51.).  Defendants' design and sale of the defective product makes them strictly liable for injuries and damages sustained by Plaintiff.  (*Id*. ¶ 50).

For the failure to warn, Count III, Plaintiff alleges that there were inadequate warnings regarding adverse side-effects and complications of the use of the device.  (*Id*. ¶ 63.).  Finally, Coloplast's warnings during the advertising and post-marketing periods were inadequate, making informed use of the product impossible.  (*Id*. ¶¶ 65, 67.).

Defendants' argument in support of dismissal is that the factual allegations are merely conclusory with no outside factual support.  Defendants state that "plaintiff's complaint does not allege a single fact in support of the numerous conclusions of negligent actions throughout Count I."  For Count II, the Plaintiff "insert[ed] a series of paragraphs reciting what he perceives the legal elements of a design defect case . . . [there is] a total lack of facts pled to support the conclusion that the Virtue device suffered from a 'design defect'."  Similar complaints are raised against the allegations in Count III.  Defendants state, therefore, Plaintiff has failed to plead sufficient facts under *Twombly* and *Iqbal* or Indiana products liability law.

The court does not find the Defendants' argument persuasive and construes all ambiguities in the light most favorable to the Plaintiff, recognizing the information disparities between the parties at this stage of litigation.[1]  With that in mind, the

---

[1] *Winslow v. W.L. Gore & Assoc., Inc.*, cited by the Plaintiff, is particularly instructive in that it analyzes *Bell Atlantic v. Twombly* (550 U.S. 544 (2007)) and *Iqbal* for a claim brought under the analogous Louisiana law.  It acknowledges that in products liability claims the knowledge is almost totally within the control of the Defendants, and Plaintiffs simply need to sufficiently allege the nature of the alleged defect and implicitly plead alternate design to survive a Rule 12(b)(6) motion.  2011 WL 866164 at *3 (W.D. La. 2011).

Defendants knew in late 2008 that the FDA had issued a warning for the identical mesh used for a highly similar, if not identical, purpose as that of the Plaintiff. (Plaintiff's Complaint ¶¶ 13-14.). This suggests that there may have been a design defect. However, it continued to be sold in 2009 without the risks being disclosed and with the knowledge that the "Virtue device had caused significant problems for and injuries to other individuals into whom the Virtue device had been implanted." (*Id*. ¶¶ 19-20.). This is sufficient to qualify as a defective product under the IPLA. IND. CODE § 34-20-4-1.

Defendants' alleged marketing of the Virtue device for non-FDA-approved purposes, combined with failing to warn customers or train and educate physicians about the device, once they knew about potentially adverse side effects, qualifies under failure to provide adequate warnings or instructions. IND. CODE § 34-20-4-2. Plaintiff has also alleged sufficient damages caused by the defective product. (*See, e.g.*, Plaintiff's Complaint ¶¶ 68-70.). Finally, there need not be plausible allegations of negligence, since the IPLA is a strict liability regime as against manufacturers. IND. CODE § 34-20-2-3. Therefore, Plaintiff's combined IPLA claim on Counts I-III is allowed to proceed.

**2. Counts IV & V**

---

The *Winslow* Court also states that *res ipsa loquitur* is a valid theory of recovery in products liability (*Id*.), and Plaintiff claims that "he has adequately pled facts to establish liabiliity under the principle [of] *res ipsa loquitur*." (Plaintiff's Brief 12.). However, Indiana courts have not been enthusiastic about expanding this theory into products liability (*see, e.g.*, *Ford Motor Co. v. Reed*, 689 N.E.2d 751, 754 (Ind. Ct. App. 1997), and this court will therefore not address Plaintiff's claims under that theory.

Plaintiff claims that to the extent the warranty claims sound in tort, they should be merged into the same IPLA claim with Counts I-III.  To withstand a Rule 12(b)(6) motion to dismiss for breach of express warranty, Plaintiff need only allege that the product was covered by an express warranty.  *Cincinnati Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, 2006 WL 299064 at *4 (N.D. Ind. 2006) (citing *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998)).  However, there is no evidence in the pleadings of express warranties made on this product, and the rest of Count IV that sounds in tort is already covered by Counts II and III (defective design and failure to warn).  Therefore, Count IV is dismissed.

Count V alleges breach of the implied warranties of merchantability and fitness for a particular use.  Unlike in contract claims, vertical privity is not required for any claim under the IPLA.  In this case, Plaintiff alleges that Defendants put the Virtue device into the stream of commerce in an inherently dangerous condition and it reached Plaintiff without substantial change.  (Plaintiff's Complaint ¶ 89.).  This was done after impliedly warranting and representing that it was of merchantable quality and fit for ordinary use.  (*Id*. ¶ 86.).  The warranty of merchantability contains, among other provisions, that the goods pass without objection in the trade; are of fair, average quality; and that the goods are fit for ordinary use.  IND. CODE § 26-1-2-314(2)(a-c). Plaintiff successfully alleges breach and damages, as well.  (Plaintiff's Complaint ¶¶ 90-93.).  Therefore, the claim in Count V dealing with the implied warranty of merchantability survives such as it sounds in tort.

The implied warranty of fitness for particular use attaches when a seller knows of a buyer's particular purpose and a buyer relies on the seller's skill to furnish particular goods. IND. CODE § 26-1-2-315. Plaintiff alleges that his "physicians . . . relied on Coloplast's superior skill and judgment, as to whether the Virtue device . . . was fit for Mr. Lautzenhiser's particular use." (Plaintiff's Complaint ¶ 88.). Since privity is not required under the IPLA, it is reasonable to infer that Coloplast knew Plaintiff's doctors were buying the device for the particular purpose of implanting it in Plaintiff. Therefore, the claim in Count V dealing with the implied warranty of fitness for particular use also survives such as it sounds in tort.

In conclusion, Counts I, II, III, and V claims sounding in tort shall be treated as a merged IPLA claim going forward, and Defendants' motion to dismiss these counts is denied.

## B. Breach of Warranties – Contract Claim

While the IPLA supplants any common law tort arguments, it does not preclude recovery based on breach of warranty. *Kucik*, 2010 WL 2694962 at *3.

### 1. Count V – Breach of Implied Warranties

The implied warranties of merchantability and fitness for a particular purpose are found in Indiana Code § 26-1-2-314 and -315 ("Sections 2-314 and 2-315"), respectively. The warranty of merchantability attaches automatically if the seller is a vendor of the goods in question, which Defendants certainly are. IND. CODE § 26-1-2--314(1). Unlike the warranty of fitness for a particular purpose, vertical privity is not required. *Atkinson*, 813 F. Supp. 2d at 1026. Plaintiff alleges that Coloplast, by putting the product into

9

commerce in Indiana, has triggered the implied warranty of merchantability, and by reaching Plaintiff without substantial change in the manner in which Coloplast sold it, allows Plaintiff to avail himself of a breach of warranty action. (Plaintiff's Complaint ¶¶ 85-86, 91.).

However, such claims are subject to the Federal Rule of Civil Procedure 9(c) requirement that a Plaintiff aver that all conditions precedent have occurred prior to filing suit. In breach of implied warranty of merchantability cases, one of those preconditions is that the seller be given notice of the product defect prior to the plaintiff filing suit. *See, e.g.*, *Hamilton Beach*, 2006 WL 299064 at *4. Nowhere in Count V does Plaintiff claim he gave notice to the Defendants of a warranty claim. The alleged notice claimed by Plaintiff was when he asked Coloplast "for information and guidance in having the Virtue device removed from his body." (Plaintiff's Complaint ¶ 133.). However, Plaintiff does not allege that he called Defendants' employee to notify him of breach of warranty. This does not qualify as notice for breach of warranty.

Economic loss must also be alleged. However, the economic losses Plaintiff claims are for personal injuries, health and medical expenses, and lost earnings, which are traditionally tort damages. (Plaintiff's Complaint ¶¶ 91-93.). In breach of warranty actions, damages are "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Hyundai Motor America, Inc. v. Goodin*, 822 N.E.2d 947, 951 n. 4 (Ind. 2005) (citations omitted).

This can be measured as the difference in value of the goods as warranted and the goods received or as cost of replacement or cost of repair. Plaintiff does not allege economic loss, and thus has failed to state a claim for the implied warranty of merchantability.

The implied warranty of fitness for particular use attaches when a seller knows of a buyer's particular purpose and a buyer relies on the seller's skill to furnish particular goods. IND. CODE § 26-1-2-315. As stated above, in a breach of contract claim, vertical privity is required. *Atkinson*, 813 F. Supp. 2d at 1026. That is, the Plaintiff buyer must have bought directly from the Defendant seller. Unlike express warranties, this privity requirement cannot be waived or relaxed. *Id*. at 1027. Plaintiff does not claim that he bought the product directly from the Defendants, so the implied warranty does not attach.

Therefore, to the extent they arise under Indiana's version of the UCC, any claims for breach of implied warranties are dismissed.

### C. Count VI: Negligent Misrepresentation

Indiana has for the most part adopted Restatement (Second) of Torts § 552 pertaining to negligent misrepresentation. *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (2007). Section 552 describes the tort as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

11

Restatement (Second) of Torts § 552 (1977).  While this has been extended to a title commitment issuer inaccurately stating the title (*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 749 (Ind. 2010)), Indiana courts have been loathe to extend this beyond the employment relationship context. That is, there must be an employee of the Defendants negligently misrepresenting material facts to the Plaintiff in the context of a business transaction.  *See, e.g.*, *Thomas v. Lewis Engineering*, 848 N.E.2d 758, 760 (Ind. Ct. App. 2006); *Industrial Dredging & Engineering v. Southern Indiana Gas & Electric Co.*, 840 F.2d 523, 526 (7th Cir. 1988).

Plaintiff claims Defendants "had the duty to accurately represent . . . to Mr. Lautzenhiser, his physicians, including Drs. Pollifrone and Steidle . . . that the Virtue device had been tested and had been determined to be safe and effective for SUI." (Plaintiff's Complaint ¶ 95.).  He further alleges that "Coloplast negligently concealed, omitted and misrepresented the Virtue device's high risk of unreasonable, dangerous, and adverse side-effects." (*Id*. ¶ 96.).  Plaintiff relies on *Clifton v. I-Flow Corp.*, an Illinois case in which the Court held that a complaint is sufficient against a corporate defendant if it contains: (1) allegations that the Corporation made the misrepresentations; (2) the content and timing of the misrepresentations; and (3) justifiable reliance by the plaintiff. 2011 WL 5077615 at *2 (N.D. Ill. 2011).  Plaintiff alleges: (1) Defendants' employee, Joel Chechick ("Chechick"), and one of his treating physicians, as a Coloplast investigator, made the misrepresentations (Plaintiff's Complaint ¶¶ 118, 132-34); (2) the false statements from Coloplast's FDA/510(k) filings and its statements regarding comparability of the Virtue device with the AdVance (Plaintiff's Complaint ¶¶ 101-02,

12

113, 118-21); and (3) that Plaintiff reasonably relied on the false statements regarding removal and its safety.  (*Id.*[2]).

Plaintiff's argument is unpersuasive for three reasons.  First, no Indiana case has extended negligent misrepresentation to cover concealment or omission.  Given Indiana's reluctance to broaden the scope of negligent misrepresentation, (*see, e.g.*, *Schwartz v. Oberweis*, 826 F. Supp. 280, 289 (N.D. Ind. 1993), *Industrial Dredging & Engineering v. Southern Indiana Gas & Electric Co.*, 840 F.2d at 526), this court will not extend the tort to cover the alleged omissions in paragraphs 95 and 96.  Since this case is before the court on diversity jurisdiction, the court applies Indiana law, and an Illinois case is not persuasive authority.  Second, with respect to the Plaintiff's conversations with Chechick, the tort has not been extended outside the business transaction context in Indiana, either.  Any alleged misrepresentations by Chechick (¶¶ 132-33) were in regard to the safety or efficacy of a potential medical procedure, not a business transaction.[3]  Finally, while a third party like Plaintiff can sue under negligent misrepresentation for reasonable reliance on advice given to the third party's contractual partner by a defendant, the defendant

---

[2] It should be noted that Plaintiff combines the facts alleged in Count VI with those contained in Count VIII, Negligently Providing Misinformation Regarding Treatment.  Given the overlap between the claims and that, as will be discussed *infra*, the latter claim is not recognized in Indiana law, this court analyzes the factual allegations as a combined negligent misrepresentation claim.

[3] *Cf. Jeffrey v. Methodist Hospitals*, in which a court allowed a claim to proceed against a hospital for negligent misrepresentation regarding Plaintiffs' baby's condition before adoption.  956 N.E.2d 151, 153-54 (Ind. Ct. App. 2011).  However, as Defendants' point out, this case pertained to an express condition precedent as to whether to proceed with an adoption, and nothing to do with a medical procedure.  (Defendants' Memorandum 14.).

must have had actual knowledge that the third party would rely on the advice. *Thomas v. Lewis Eng'g, Inc.*, 848 N.E.2d 758, 760. Plaintiff has not alleged that Coloplast knew he would rely on any misrepresentations made to his doctors. Therefore, Count VI in its entirety and Count VIII, to the extent that it alleges negligent misrepresentation, are dismissed.

### D. Count VII: Fraud

Unlike the IPLA claim, which can be satisfied through the "notice pleading" of Rule 8(a), a claim of fraud must be plead "with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). A Plaintiff must describe the "who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). However, the particularity requirement is relaxed when the "requisite information was within the defendant's exclusive knowledge." *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 471 (7th Cir. 1999) (internal quotation omitted), *see also Pirelli Armstrong*, 631 F.3d at 442 ("the requisite information . . . may vary on the facts of a given case.").

For the "who" element, Plaintiff alleges that the Defendants falsely claimed to the Plaintiff, his doctors, and medical and general communities that the product was safe. (Plaintiff's Complaint ¶ 102.). For "what," Plaintiff alleges material omissions, including but not limited to: that it was not as safe as other SUI treatments; the risk of adverse events with the Virtue device was not adequately tested; Coloplast deliberately failed to follow up on adverse results in clinical studies; more regular monitoring of patients was required versus other SUI treatments; and negligent and defective design and

14

manufacture. (*Id*. at ¶ 105.).  For the "how" element, the Plaintiff's doctors reasonably relied upon Defendants' false representations in deciding to implant the device; had they known of these falsities, they would not have implanted the virtue device in Plaintiff.  (*Id*. at ¶ 110; 125-26.).  Given the information disparities between the parties, this court finds Plaintiff meets these first three elements.  Construing the facts in the light most favorable to the Plaintiff, his allegation of these statements made to his doctors and their reliance on them (*Id*.) meets the "when" element, since they were presumably made sometime between the product's release and his surgery on July 14, 2009.

Plaintiff fails, however, with respect to the "where" element.  This is due to his allegations of misrepresentations to the FDA.  (*See, e.g.*, *Id*. at ¶¶ 102, 113, 118-22.).  In 2001, the U.S. Supreme Court held that "fraud on the FDA" claims could not be the subject of federal litigation.  *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).  Without these allegations, Plaintiff has failed to allege any specific reports, press releases, or advertisements (Plaintiff's Complaint ¶ 115) that would put the Defendants on any notice of the medium in which these fraudulent statements were made.  Count VII is therefore dismissed, and any reference to alleged fraudulent statements made to the FDA must be stricken elsewhere in the Complaint.

### Count VIII: Negligent Misinformation Regarding Treatment

Plaintiff alleges that Dr. Steidle, a Coloplast investigator, and Chechick gave him incorrect information regarding removal of the device, and that this caused a delay in treatment and additional pain and suffering.  (*Id*. ¶¶ 132-35.).  To the extent that this alleged incorrect information constituted negligent misrepresentation about the product, it

was analyzed in Count VI.  However, negligent misrepresentation regarding treatment is not an independent cause of action in Indiana and there do not appear to be any Indiana courts that have recognized this as an independent tort action.  Count VIII is therefore dismissed.

### E.  Count IX: Indiana Deceptive Consumer Sales Practices Act

Plaintiff alleges that Coloplast's misrepresentations violated the Indiana Deceptive Consumer Sales Practices Act.  IND. CODE § 24-5-0.5-1 *et seq.*  A plaintiff can allege an uncured deceptive act (*Id*. at -1(a)(7)), which requires the consumer to give the seller notice and an opportunity to cure the alleged deceptive practice, either through modification or rescission of the transaction, before filing suit.  *Id*. at -1(a)(5-7). Plaintiff's communications with Chechick, as stated previously, related to medical advice, and Plaintiff has not shown how he gave notice of the alleged deceptive act.  IND. CODE § 24-5-0.5-5(a).  Consequently, Plaintiff must plead with particularity pursuant to Rule 9(b), although as stated *supra*, this court remains mindful of the information disparities between parties when deciding whether a claim survives a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Ackerman v. Northwestern Mutual Life Ins. Co*., 172 F.3d at 471; *Pirelli Armstrong*, 631 F.3d at 442.

Plaintiff alleges five incurable deceptive acts.  (Plaintiff's Complaint ¶ 139(a-e).) The first three allege that Coloplast represented that the Virtue device had "sponsorship, approval, performance, characteristics, accessories, uses, or benefits which it does not have" (*Id*. ¶ 139(a)), that the device was of a particular standard (*Id*. 139(b)), and that Coloplast itself "had certain sponsorships, approvals, affiliations which Coloplast did not,

16

and knew it did not, have." (*Id.* ¶ 139(c).).  As Defendants point out, this is simply parroting what constitutes a deceptive act under the Consumer Sales Act (IND. CODE §§ 24-5-0.5-3(a)(1), (2), and (7), respectively) and does not satisfy the "who, what, when, where, and how" elements of fraud.  These claims are dismissed.  The language of Paragraph 139(d) is a breach of implied warranty of merchantability, which the Consumer Sales Act does not seem to address.  This claim is dismissed as well.

Paragraph 139(e), however, presents a much closer call.  Unlike paragraph 139 (a-c), there was an FDA warning out for a mesh used to treat female SUI at the time Plaintiff had the Virtue device implanted.  (Plaintiff's Complaint ¶ 14.).  Given that the Defendants owned the division of one of the companies that made the mesh (*Id.*), it is reasonable to infer that the meshes were similar if not identical.  However, an FDA warning does not appear on its face to be identical to a recall, Plaintiff provides no further details about any other recall, and the Consumer Sales Act does not provide for a cause of action for sales made after FDA warnings.  Thus, this claim must be dismissed, and Count IX is dismissed in its entirety.

### F. Count X: Unjust Enrichment

Unjust enrichment is an equitable remedy, and to prevail "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991).  In this case, Plaintiff claims that he paid Coloplast for the device and he has not received the safe and effective device for which he paid.  (Plaintiff's Complaint ¶¶ 145-47.).  He further claims that to

allow Coloplast to keep the purchase price for a product that made his SUI worse would be unjust. Taken as true, this meets the unjust enrichment requirements. However, the wrong relief was plead by Plaintiff, as he alleges personal injuries, health expenses, and lost wages. (Plaintiff's Complaint ¶¶ 149-51.). As an equitable remedy, the appropriate remedy is restitution, as Plaintiff himself realizes. Count X is therefore dismissed without prejudice.

### G.  Other Issues

Defendants also asked Plaintiff's prayers for punitive damages and attorney fees be stricken or dismissed. The only statutory basis for attorney fees in the complaint is under the Consumer Sales Act. IND. CODE § 24-5-0.5-4(a-b). Since that claim (Count IX) has been dismissed, the request for attorney fees is hereby stricken until and unless Plaintiff states a claim upon which relief can be granted under the Consumer Sales Act.

To support an award of punitive damages, a plaintiff must show by clear and convincing evidence that "the defendant acted with malice, fraud, gross negligence, or oppression which did not result from mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other human failing." *Powers v. Gastineau*, 568 N.E.2d 1020, 1025 (Ind. Ct. App. 1991). Defendants claim that because the fraud claims have been dismissed, there is no basis for a prayer for punitive damages. Defendants further allege that Plaintiff abandoned his claim for punitive damages by failing to respond to the Defendants' allegations in its own brief. Because the court agrees with the Seventh Circuit that failing to respond to substantive arguments in a Defendants'

motion to dismiss constitutes waiver (*see, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 720-21 (7th Cir. 2011)), it is ordered that the prayer for punitive damages be stricken.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Docket # 16) is **GRANTED** in part and **DENIED** in part. Counts VI, VII, VIII, IX, and X are dismissed without prejudice in their entirety. Counts I, II, III, and V claims sounding in tort are not dismissed but instead proceed under a unified IPLA claim. Count IV is dismissed without prejudice to the extent it alleges breach of express warranty and merged into the unified IPLA claim to the extent its claims sound in tort. Finally, the prayer for attorney fees and punitive damages is stricken.

**SO ORDERED** this 29th day of September 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record